630 F.2d 1299
 Robert DAVIS, Individually and on behalf of his wife,
Victoria Davis, his two children, Robert and Janel
Davis, and Jane Jensen, Appellees,
v.
Michael V. REAGEN, Individually and as Commissioner of the
Iowa Department ofSocial Services, Appellant.
 No. 80-1246.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1980.
Decided Oct. 1, 1980.
 
 Thomas J. Miller, Atty. Gen., of Iowa, Des Moines, Iowa, John G. Black, Sp. Asst. Atty. Gen., Stephen C. Robinson, Asst. Atty. Gen., Des Moines, Iowa, for appellant.
 Mark S. Schaffner, HELP Legal Assistance, Davenport, Iowa, Sherry J. Leiwant, Adele M. Blong, Center on Social Welfare Policy and Law, New York City, Michael B. Trister, Sobol & Trister, Washington, D. C., for appellees.
 Before HEANEY and BRIGHT, Circuit Judges, and HUNGATE, District Judge.*
 BRIGHT, Circuit Judge.
 
 
 1
 Michael Reagen, Commissioner of the Iowa Department of Social Services (IDSS), appeals from a judgment of the district court[1] enjoining him from denying assistance under the Aid to Families with Dependent Children program (AFDC) to families whose unemployed parents refuse without good cause to accept bona fide offers of employment. This appeal poses the difficult problem of determining the appropriate sanction for such refusals under the AFDC statute, 42 U.S.C. §§ 601-644 (1976). Having carefully reviewed that statute and pertinent regulations, we affirm.
 
 
 2
 I. Background.
 
 
 3
 IDSS administers the AFDC program in Iowa. This program is designed to provide financial assistance to families with dependent children in financial need because one parent is dead, absent from the home, incapacitated, or unemployed. In conjunction with AFDC, Congress created a work incentive (WIN) program to provide employment training and services for AFDC families. The WIN program in Iowa is administered through the Iowa Department of Job Services, pursuant to an agreement between it and the Secretary of Labor. In some Iowa counties the WIN program is mandatory; nonexempt AFDC recipients must register in WIN to receive benefits. In other counties registration in WIN is voluntary; AFDC recipients also may qualify for benefits by registering with Job Services of Iowa in its capacity as a state public employment agency.
 
 
 4
 Plaintiff Robert Davis registered in the WIN program in December 1976. In September 1977, Davis was accused of failing to cooperate with the WIN program after he failed to obtain a job to which he had been referred.[2] Following an unsuccessful administrative appeal, IDSS cut off all assistance to the Davis family.[3]
 
 
 5
 Davis alleged in his complaint that the actions of IDSS contravened the due process and equal protection clause of the fourteenth amendment[4] and conflicted with the AFDC statute. Davis sought and the district court granted certification of a class consisting of all those innocent family members qualifying for AFDC assistance in Iowa because a parent was unemployed, whose assistance had been or might be terminated because of the parents' refusal to cooperate in finding a job.[5]
 
 
 6
 The district court determined that Davis' constitutional claims conferred jurisdiction under 28 U.S.C. § 1343(3) (1976). The court then concluded that it could exercise pendent jurisdiction over Davis' supremacy clause claim that IDSS policy violated federal standards. Finding the supremacy clause claim dispositive, the court held that the only appropriate sanction under the federal statute for an unemployed parent's failure to accept offers of employment or otherwise cooperate in the WIN program is elimination of that parent's needs in calculating assistance to the family. See 42 U.S.C. § 602(a) (19)(F)(i)(1976).
 
 
 7
 On appeal IDSS argues that the district court lacked jurisdiction to decide this case and, in any event, decided it wrongly. In substantial part, IDSS contends that the court accorded insufficient deference to the view of the Departments of Labor and of Health and Human Services (formerly Health, Education and Welfare), which supports appellant's position.
 
 
 8
 II. Analysis.
 
 
 9
 A. Jurisdiction.
 
 
 10
 In Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Supreme Court held that jurisdiction under 28 U.S.C. § 1343(3) and (4) does not encompass a claim that a state welfare regulation is invalid because it conflicts with the Social Security Act. Appellant argues that under this holding the district court lacked jurisdiction to consider Davis' supremacy clause claim.
 
 
 11
 Appellant recognizes, as he must, that if Davis' complaint stated a colorable constitutional claim which would confer federal jurisdiction on the district court, then the court also had jurisdiction to hear Davis' supremacy clause claims on a pendent basis. See id. at 618 n.36, 99 S.Ct. at 1916; Hagans v. Lavine, 415 U.S. 528, 536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Appellant argues, however, that the constitutional claims presented by Davis were not sufficiently substantial to confer jurisdiction.
 
 
 12
 Having carefully considered appellant's argument, we agree with the district court that Davis' constitutional claims satisfy the minimal standards set forth in Hagans v. Lavine, supra.[6] Cf. Herweg v. Ray, 619 F.2d 1265, 1269 (8th Cir. 1980) (en banc) (due process and equal protection claims presented substantial constitutional questions); Peske v. Tangedahl, 619 F.2d 729 (8th Cir. 1980) (cause remanded for consideration of the substantiality of plaintiff's constitutional claims). It follows that the district court had federal jurisdiction to hear this case.
 
 
 13
 B. The Statutory Scheme: Overview and Historical Development.
 
 
 14
 AFDC is a joint federal-state welfare program established by Title IV-A of the Social Security Act, 42 U.S.C. §§ 601-644 (1976). Under the program, states receive federal matching funds for the cost of AFDC payments to "dependent children" and their caretaker relatives if the state implements a plan that meets statutory requirements. The statute defines the term "dependent child" as a needy child who has been deprived of parental support or care "by reason of the death, continued absence from the home, or physical or mental incapacity of a parent," 42 U.S.C. § 606(a)(1) (1976), or "by reason of the unemployment * * * of his father." 42 U.S.C. § 607(a) (1976).[7]
 
 
 15
 Congress first added an unemployed parents provision to the AFDC program in 1961. Pub.L.No. 87-31, § 1, 75 Stat. 75 (1961) (codified in 42 U.S.C. § 607 (1964)). This statute required that a state's AFDC plan provide for cooperative arrangements with state public employment agencies, including registration and periodic reregistration by unemployed parents, so that these parents might find employment. 42 U.S.C. § 607(2)(A) (1964). The statute also required that state plans include
 
 
 16
 (B) provisions to assure that aid to families with dependent children is not provided to any such child or relative if, and for as long as, the unemployed parent refuses without good cause to accept employment, in which he is able to engage, which (i) is offered through such public employment offices, or (ii) is otherwise offered by an employer if the offer is determined by the State or local agency administering the State plan, after notification by such employer, to be a bona fide offer of such employment(.) (42 U.S.C. § 607(2)(B) (1964) (emphasis added).)
 
 
 17
 In short, benefits to the entire family would be terminated if the unemployed parent refused an offer of employment.
 
 
 18
 Congress restructured this part of the AFDC program in 1967. Pub.L.No. 90-248, § 203(a), 81 Stat. 821 (1967). The amended statute provided for uniform national standards in defining unemployment and established three prerequisites for receipt of aid.[8] Of greater significance to this case, the amendment repealed the previous statutory provisions governing cooperation with state employment agencies and sanctions for refusing work. In their place, the amended statute provided for referral (later, certification) of unemployed parents to the Secretary of Labor under a newly created comprehensive work incentive (WIN) program. 42 U.S.C. § 602(a)(19) and §§ 630-644 (1976).
 
 
 19
 Under the WIN program, the sanction for nonparticipation or refusal of a job offer is termination of benefits only to the family member who refused to participate or accept the offer. 42 U.S.C. § 602(a)(19)(F) (1976).[9] The limited nature of this sanction reflects a legislative compromise between the Senate and the House; the House version of the bill provided for termination of benefits to the entire family if and for so long as the unemployed parent refused to accept employment. See Conf.Rep.No. 1030, 90th Cong., 1st Sess., reprinted in (1967) U.S. Code Cong. & Admin. News 2834, 3179, 3204-05.
 
 
 20
 That Congress intended the WIN sanction to apply to unemployed parents is clear. The original version of the WIN sanction provision specifically included (in a parenthetical reference) relatives or individuals referred to the Secretary of Labor pursuant to 42 U.S.C. § 607(b)(2), the unemployed parents provision. See 42 U.S.C. § 602(a)(19)(F) (1970).[10] Likewise, the regulations promulgated by the Department of Health, Education and Welfare in 1969 to implement the new WIN program included unemployed parents in the category of persons subject to sanctions under WIN for refusal to participate or to accept job offers. 34 Fed.Reg. 1354, 1357 (1969) (to be codified in 45 C.F.R. § 220.35(a)(1)(i), (a)(1)(iv), and (a)(6)(i)).[11]
 
 
 21
 Congress, however, retained independent requirements for state AFDC plans under the unemployed parents provision. These requirements specified that there should be cooperation with state vocational education agencies to encourage retraining where possible; they also specified that state plans must provide
 
 
 22
 (C) for the denial of aid to families with dependent children to any child or relative specified in subsection (a) of this section
 
 
 23
 (i) if, and for so long as, such child's father is not currently registered with the public employment offices in the State, and
 
 
 24
 (ii) with respect to any week for which such child's father receives unemployment compensation * * *.
 
 
 25
 (42 U.S.C. § 607(b)(2)(C) (1970).)
 
 
 26
 Although this state registration requirement could coexist quite happily with the more limited sanctions provided under the WIN program, a number of subsequent developments have clouded the picture.
 
 
 27
 First, 42 U.S.C. § 602(a)(19)(A), which originally required only prompt referral of AFDC recipients to the Secretary of Labor, was amended in 1971 to require "that every individual, as a condition of eligibility for aid under (AFDC), shall register for manpower services, training, and employment as provided by regulations of the Secretary of Labor(.)" Pub.L.No. 92-223, § 3(a) (2), 85 Stat. 803 (1971) (codified in 42 U.S.C. § 602(a)(19)(A) (1976)) (emphasis added).[12]
 
 
 28
 Second, the Secretary of Labor's regulations after 1975 came to speak of "deregistration," or removal of an individual from the WIN program. See 40 Fed.Reg. 43,182, 43,183 (1975) (codified in 45 C.F.R. § 224.1 (1979)). The regulations stated that "(c)ertified registrants shall accept assignment to employment or WIN training as determined appropriate by the WIN sponsors (i. e., generally the local employment service) or face deregistration action." 45 C.F.R. § 224.34(a) (1976). An explicit deregistration provision was added, requiring the local WIN sponsor to perform all deregistrations and mandating deregistration, inter alia, when an individual refuses to participate in WIN without good cause. 45 C.F.R. § 224.50(a), (b) (1976). At the same time, the limited sanction provision was altered in two significant respects: the statutory reference to persons "certified" to the Secretary (see note 10 supra ) was changed to "registered recipients"; and the failure to accept a job offer no longer appeared as a ground for the limited sanctions. Compare 42 U.S.C. § 602(a)(19)(F) (1976) with 45 C.F.R. § 224.51(a) (1976). Hence, an individual who was deregistered (e. g., for failing to accept a job offer) could no longer avail himself of the limited sanction provisions in the regulations.[13]
 
 
 29
 Next came the amendment of the unemployed parents provision, 42 U.S.C. § 607(b)(2)(C), in October 1976. Pub.L. No. 94-566, Title V, § 507(a), (b), (d), 90 Stat. 2688 (1976). As amended, the statute required AFDC plans to provide
 
 
 30
 (C) for the denial of aid to families with dependent children to any child or relative specified in subsection (a) of this section-
 
 
 31
 (i) if and for so long as such child's father, unless exempt under section 602(a)(19)(A) of this title, is not registered pursuant to such section for the work incentive program established under part C of this subchapter, or, if he is exempt under such section by reason of clause (iii) thereof or no such program in which he can effectively participate has been established or provided under section 632(a) of this title, is not registered with the public employment offices in the State, and
 
 
 32
 (ii) with respect to any week for which such child's father qualifies for unemployment compensation under an unemployment compensation law of a State or of the United States, but refuses to apply for or accept such unemployment compensation; and
 
 
 33
 (D) for the reduction of the aid to families with dependent children otherwise payable * * * by the amount of any unemployment compensation that such child's father receives * * *.
 
 
 34
 The legislative history of this amendment reveals that it had two purposes: to simplify registration requirements for unemployed parents, and to alter the relationship between AFDC payments and unemployment compensation by requiring applicants to collect unemployment compensation and states to raise unemployment compensation to AFDC benefit levels. See H.Conf.Rep. No. 94-1745, 94th Cong., 2d Sess. 28-29, reprinted in (1976) U.S.Code Cong. & Admin. News 5997, 6032, 6048-49. There is no indication in the legislative history that Congress either approved or disapproved of the concept or sanction of deregistration, which by then had become embodied in the applicable regulations.
 
 
 35
 The final development worthy of note came in 1980 with the recodification of the WIN regulations. See 45 Fed.Reg. 27,420 (1980) (to be codified in 45 C.F.R. § 224.51). This recodification yet again modified the limited sanction provision, 45 C.F.R. § 224.51 (1979), to include, among other changes, a parenthetical caveat directing the reader to 45 C.F.R. § 233.100(a)(5)(i) for sanctions governing unemployed parents; the latter provision simply restates the registration requirement of 42 U.S.C. § 607(b)(2)(C)(i) (1976). An introductory comment explains that the Departments of Labor and Health, Education, and Welfare found the limited sanction provision
 
 
 36
 inadequate to the extent that it failed to identify the sanction applied to an unemployed father who is not registered with WIN. Under (42 U.S.C. § 607(b)(2) (C)(i) (1976)), if the family of this father received AFDC on the basis of his unemployment, the entire family becomes ineligible for benefits unless the father is exempt from the WIN registration requirement. (45 Fed.Reg. 27,420, 27,421 (1980).)
 
 
 37
 That federal regulators now view registration under the unemployed parents provision as volatile and approve application of different sanctions to unemployed parents under 42 U.S.C. § 607(b)(2)(C)(i) is made clear in an Action Transmittal Letter issued on February 15, 1979. In noting that state job programs for AFDC recipients must conform to WIN requirements, the letter explains:
 
 
 38
 (W)hen an AFDC recipient or caretaker fails to participate, without good cause, that person's needs will not be taken into account in determining the need of the family and the amount of AFDC assistance which will be furnished to the remaining eligible family members. However, if a father receiving AFDC-UF (AFDC under the unemployed parents provision) fails to participate, without good cause the entire family will be ineligible for AFDC-UF benefits. (Action Transmittal Letter No. SSA-AT-79-5 (OFA), at 3-4, reproduced in Brief for Appellant at 12-13.)
 
 
 39
 Similarly, in an amicus brief filed with the district court, the Secretary of Health, Education and Welfare supported appellant's position that refusal to accept a bona fide job offer justifies deregistration, which in turn implicates the sanctions of 42 U.S.C. § 607(b)(2)(C)(i). The Secretary justified the special sanctions for families of unemployed parents primarily on grounds of symmetry:
 
 
 40
 If the family qualifies for assistance because of the unemployment of the father, it is consistent for the family to be disqualified if the father fails to comply with the WIN requirements, which are directed to returning him to employment.
 
 
 41
 With this rather detailed history of the statute and regulation behind us, we can now evaluate the parties' arguments on the merits.
 
 
 42
 C. The Contentions of the Parties.
 
 
 43
 IDSS argues initially that because the states have considerable freedom in administering the AFDC program, this court should recognize their authority to prescribe sanctions for noncooperation. This argument lacks merit. First, the latitude permitted the states in establishing standards of eligibility for AFDC (see New York Department of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973)) does not necessarily extend to the meting out of sanctions. Second, and more important, the precise issue in this case is which of two statutory sanctions ought to apply. IDSS relies specifically on the interpretation given the statute by a federal agency. In so relying, IDSS cannot consistently argue that this is a matter left to the discretion of the states.
 
 
 44
 IDSS next contends that its actions were authorized by 42 U.S.C. § 607(b)(1) (B) (1976), which permits the payment of AFDC benefits only if the parent has not, within thirty days, refused a bona fide offer of employment or job training. See note 8 supra. IDSS argues that this section's aid-qualifying factors should be interpreted as ongoing requirements. In addition to the strain this interpretation places on the statutory language, we note that Congress provided sanctions under the AFDC program apart from the initial qualifications. Because the district court certified a class of family members who initially qualified for AFDC, we must focus on the sanctions for refusal to cooperate in finding a job.
 
 
 45
 We come, then, to the crux of the case: the respective scope of 42 U.S.C. § 602(a)(19)(F) (1976) and 42 U.S.C. § 607(b)(2)(C) (1976). IDSS argues that the latter sanction is applicable to cases of deregistration for failure to cooperate in seeking employment. IDSS further argues that this provision should be applied in preference to the milder sanctions of § 602(a)(19)(F) because it refers specifically to unemployed parents rather than to "any child, relative, or individual." Were this merely a case of static statutory interpretation, we might be inclined to agree with IDSS. Given the history of the statute, however, we find that these arguments do not withstand closer scrutiny.
 
 
 46
 First, the registration provision appears to be aimed in large part at coordinating the AFDC-unemployed parents program with local job service agencies. This theme is illustrated both in the development of the provision out of 42 U.S.C. § 607(2)(A) (1964)[14] and in its 1976 amendment. Initial registration serves to initiate such coordination and may well have been what Congress contemplated.
 
 
 47
 To be sure, the statute does not explicitly restrict the penalties of 42 U.S.C. § 607(b)(2)(C) to initial failures to register. The statute, however, also does not authorize deregistration. Consistent interpretation of the statute requires us to adhere to a restrictive concept of registration because Congress expressly made the WIN sanctions applicable to the unemployed parents provision in the 1967 amendments. These sanctions cover precisely the behavior that allegedly justifies deregistration. In our view, the development and flourishing of deregistration in the WIN regulations since 1972 constitutes an unauthorized amendment, not an elaboration, of the statute, for it serves to bypass the sanctions that the statute expressly require. We cannot perceive congressional ratification of this change on the record before us.
 
 
 48
 Appellant's argument that the sanctions contained in 42 U.S.C. § 607(b)(2)(C) (1976) are "more specific" than the WIN sanctions must also fail. 42 U.S.C. § 602(b)(2)(C) speaks of registration; 42 U.S.C. § 602(a)(19)(F) speaks of the specific behavior of unemployed parents present here-the refusal to cooperate or to accept employment. Legislative history clearly demonstrates that Congress intended the latter sanctions to apply to unemployed parents. It may be, as IDSS argues, that these sanctions are insufficient to prevent abuse, but that argument is one for Congress to address if it deems reconsideration necessary.
 
 
 49
 Finally, IDSS claims that we should defer to the agencies charged with administering the statute. We recognize that an agency's interpretation of the statute under which it operates should be accorded some deference but "this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history." International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers v. Daniel, 439 U.S. 551, 566 n.20, 99 S.Ct. 790, 800, 58 L.Ed.2d 808 (1979); Southeastern Community College v. Davis, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). Moreover, the agencies have markedly changed their views since 1972. We believe that their contemporaneous interpretation of the 1968 amendment and the new WIN program more closely accord with the language and intent of the statute than do their more recent pronouncements.
 
 
 50
 Accordingly, we affirm the judgment of the district court enjoining the actions of IDSS as contrary to the AFDC statute.
 
 
 
 *
 WILLIAM L. HUNGATE, United States District Judge, Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable William C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa. The district court opinion is reported at 485 F.Supp. 1255 (S.D.Ia.1980)
 
 
 [2]
 Davis apparently made a number of comments during his job interview that the interviewer deemed inappropriate
 
 
 [3]
 Russell Jensen, husband of plaintiff-intervenor Jane Jensen, also suffered termination of AFDC benefits to himself and his family for failing to cooperate with Job Services of Iowa in accepting referrals and seeking employment
 
 
 [4]
 Davis claimed violations of the equal protection clause because: (a) deregistration of a parent for failure to participate in WIN deprives all needy family members of AFDC, whereas deregistration of caretaker relatives other than a parent only reduces AFDC payments; and (b) innocent family members lose AFDC assistance when the parent refuses an employment offer, but not if the parent dies, leaves, or becomes incapacitated. Davis also claimed that the action of IDSS violates due process by punishing needy dependent children for the alleged wrongdoing of their parents
 
 
 [5]
 IDSS does not appeal this certification
 
 
 [6]
 That is to say, Davis' claims are not obviously frivolous or obviously lacking in merit. See Hagans v. Lavine, supra, 415 U.S. at 537-38, 94 S.Ct. at 1378
 
 
 [7]
 In Califano v. Westcott, 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979), the Supreme Court held that the statutory exclusion of unemployed mothers constituted impermissible sex discrimination. Under the remedial order approved by the Court, a family may qualify for benefits if either the mother or the father is unemployed. In this opinion, therefore, we will refer to 42 U.S.C. § 607 (1976) as the "unemployed parents" provision of the AFDC program
 
 
 [8]
 The statute states that benefits must be provided to families in which a child has been deprived of parental support or care by reason of his father's unemployment when
 (A) such child's father has not been employed (as determined in accordance with standards prescribed by the Secretary) for at least 30 days prior to the receipt of such aid,
 (B) such father has not without good cause, within such period (of not less than 30 days) as may be prescribed by the Secretary, refused a bona fide offer of employment or training for employment, and
 (C)(i) such father has 6 or more quarters of work (as defined in subsection (d)(1) of this section) in any 13-calendar-quarter period ending within one year prior to the application for such aid or (ii) he received unemployment compensation under an unemployment compensation law of a State or of the United States, or he was qualified (within the meaning of subsection (d)(3) of this section) for unemployment under the unemployment compensation law of the State, within one year prior to the application for such aid(.) (42 U.S.C. § 607(b)(1) (1976).)
 
 
 [9]
 This sanction provision reads:
 (I)f and for so long as any child, relative, or individual (certified to the Secretary of Labor pursuant to subparagraph (G)) has been found by the Secretary of Labor under section 633(g) of this title to have refused without good cause to participate under a work incentive program established by part C with respect to which the Secretary of Labor has determined his participation is consistent with the purposes of such part C, or to have refused without good cause to accept employment in which he is able to engage which is offered through the public employment offices of the State, or is otherwise offered by an employer if the offer of such employer is determined, after notification by him, to be a bona fide offer of employment
 (i) if the relative makes such refusal, such relative's needs shall not be taken into account in making the determination under clause (7), and aid for any dependent child in the family in the form of payments of the type described in section 606(b)(2) of this title (which in such a case shall be without regard to clauses (A) through (E) thereof (protective or vendor payments) or section 608 of this title (payments for foster care) will be made;
 (ii) aid with respect to a dependent child will be denied if a child who is the only child receiving aid in the family makes such refusal;
 (iii) if there is more than one child receiving aid in the family, aid for any such child will be denied (and his needs will not be taken into account in making the determination under clause (7)) if that child makes such refusal; and
 (iv) if such individual makes such refusal, such individual's needs shall not be taken into account in making the determination under clause (7);
 except that the State agency shall, for a period of sixty days, make payments of the type described in section 606(b)(2) of this title (without regard to clauses (A) through (E) thereof) on behalf of the relative specified in clause (i), or continue aid in the case of a child specified in clause (ii) or (iii), or take the individual's needs into account in the case of an individual specified in clause (iv), but only if during such period such child, relative, or individual accepts counseling or other services (which the State agency shall make available to such child, relative, or individual) aimed at persuading such relative, child, or individual, as the case may be, to participate in such program in accordance with the determination of the Secretary of Labor(.) (42 U.S.C. § 602(a)(19)(F) (1976) (emphasis added).)
 
 
 [10]
 Congress replaced this parenthetical reference in 1971 with the current language referring to persons "certified to the Secretary of Labor pursuant to (42 U.S.C. § 602(a)(19)(G))." See note 7 supra. At the same time, it amended the language in 42 U.S.C. § 607(b)(2)(A) to require prompt certification (rather than referral) to the Secretary of Labor under 42 U.S.C. § 602(a)(19). These changes in wording left unaltered the relationship between WIN and the unemployed parents provision
 
 
 [11]
 The regulations read, in relevant part:
 (6)(i) If and for so long as an individual described in and referred pursuant to subparagraph (1)(i) of this paragraph (a) (including, specifically, unemployed fathers) has been determined by the Manpower Agency to have refused without good cause to participate in the Work Incentive Program or to accept a bona fide offer of employment in which he is able to engage:
 (a) If such individual is a relative receiving AFDC, his needs will not be taken into account in determining the family's need for assistance, and assistance in the form of protective or vendor payments or of foster care will be made(.) (34 Fed.Reg. 1354, 1357 (1969) (to be codified in 45 C.F.R. § 220.35(a)(6)(i).)
 
 
 [12]
 The amended regulations governing the WIN program reflect this new requirement. See 37 Fed.Reg. 12,200, 12,201 (1972) (to be codified in 45 C.F.R. § 233.11(a), (d), and (f)). Failure to register under WIN would carry the same penalty as failure to participate or accept a job offer: the needs of the individual would not be taken into account, but assistance would be furnished to eligible family members. 37 Fed.Reg. 12,200, 12,201 (1972) (to be codified in 45 C.F.R. § 223.11(d))
 
 
 [13]
 The 1975 and 1976 recodifications of the WIN regulations left unaltered the regulatory provision describing protective or vendor payments, 45 C.F.R. § 234.60(12) (1979). That provision states, in part:
 For WIN cases, the State plan must provide that, when protective or vendor payments are made pursuant to § 233.11(f)(1) of this chapter (because an individual certified to the work incentive program has been found by the Secretary of Labor, under section 433(g) of the Act, to have refused without good cause to participate in the program or to accept a bona fide offer of employment), only paragraphs (a)(7), (9)(ii), and (11)(i) and (ii) of this section will be applicable. * * * Provision will be made for termination of protective payments, or payments to a person furnishing goods or services, with return to money payment status when adults who refused training or employment without good cause either accept training or employment or agree to do so. In the case of continuing refusal of the relative to participate, payments will be continued for the children in the home in accordance with this paragraph.
 The (partial) recodification of old § 233.11(f)(i) in 45 C.F.R. § 224.51 (1979), without a corresponding change in cross-reference, orphaned the quoted provision in the WIN regulations.
 
 
 [14]
 Originally, 42 U.S.C. § 607(2)(A) (1964) simply provided for coordination with state employment agencies, including periodic registration and reregistration by unemployed parents. The sanctions of 42 U.S.C. § 607(2)(B) (1964) were reserved for parents who failed to accept employment. In the version of amended 42 U.S.C. § 607(b) offered by the House in 1967, these sanctions were to be applied in situations where the parent was not registered as well as in situations where the parent refused to accept employment. Both types of situations, however, were treated in distinct subsections
 The Senate rejected the House sanctions for refusing employment, and adopted in their place the WIN sanctions, 42 U.S.C. § 602(a)(19)(F) (1976). Clearly, the registration provision has no broader meaning than it originally had in the House version of the amended statute, and it does not encompass the requirement that an unemployed parent accept proffered employment. Cf. 42 U.S.C. § 602(a) (19)(A)(vi) (1976) (similarly distinguishing the requirement that an AFDC recipient register from the requirement that the recipient accept employment).