Trudie C. **JOHNSTON, on Behalf of Rebecca JOHNSTON, Isaac Johnston, Elizabeth Johnston, William Johnston, and Daniel Johnston, minors, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

James **ELLENBECKER, Secretary of the South Dakota Department of Social Services, and the Agents, Employees, and Successors of the same, and Richard Lyng, Secretary of the United States Department of Agriculture, and the Agents, Employees, and Successors of the same, Defendants.**

Civ. No. 87–3022.

United States District Court, D. South Dakota, C.D.

Aug. 10, 1988.

Mark Falk, Larry Plank, Black Hills Legal Services, Rapid City, S.D., for plaintiffs.

Mark Bratt, Asst. Atty. Gen., Office of Legal Services/D.S.S., Pierre, S.D., for State defendant.

David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for Federal defendant.

MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Dear Counsel:

Cross motions for summary judgment have been filed in this action raising the question of whether state rules and federal regulations on the imposition of sanctions for individuals who intentionally violate provisions of the Food Stamp Program violate the Food Stamp Act. Specifically, the plaintiffs challenge the State of South Dakota's imposition of a sanction against a household receiving Food Stamp benefits when an intentional program violation is committed by an adult member of the household and as a result children within the household lose food stamp benefits. Because the state and federal regulations challenged in this action are consistent with the Food Stamp Act and are rationally related to a legitimate governmental purpose, the defendants' cross motions for summary judgment are granted.

## I.  STATUTORY FRAMEWORK

The Food Stamp Program was enacted by Congress "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011 (1982). Under the Program, states adopt plans to participate based upon uniform federal standards governing eligibility. *See* 7 U.S.C. § 2020(e)(5) (1982). States may not impose additional eligibility requirements.[1] *Id.*

Section 2015(b)(1) of Title 7 sets forth the following disqualification penalty for fraud:

Any person who has been found by any State or Federal court or administrative agency to have intentionally (A) made a false or misleading statement, or misrepresented, concealed or withheld facts, or (B) committed any act that con-

stitutes a violation of this Act [7 U.S.C. § 2011 et seq.], the regulations issued thereunder, or any State statute, for the purpose of using, presenting, transferring, acquiring, receiving, or possessing coupons or authorization cards shall, immediately upon the rendering of such determination, become ineligible for further participation in the program—

(i) for a period of six months upon the first occasion of any such determination;

. . . .

*During the period of such ineligibility, no household shall receive increased benefits under this Act [7 USCS §§ 2011 et seq.] as the result of a member of such household having been disqualified under this subsection.*

7 U.S.C. § 2015(b)(1) (1982) (emphasis added).

Pursuant to 7 U.S.C. § 2013(c), the Secretary promulgated 7 C.F.R. § 273.11(c)(1). Section 2013(c) provides: "The Secretary shall issue such regulations consistent with this Act [7 U.S.C. §§ 2011 et seq.] as the Secretary deems necessary or appropriate for the effective and efficient administration of the food stamp program...." 7 U.S.C. § 2013(c) (1982). The Secretary's regulation on sanctions for intentional program violations, codified at 7 C.F.R. § 273.11(c)(1), provides that the income of an individual found ineligible for benefits because of an intentional program violation shall continue to be counted in determining household income. 7 C.F.R. § 273.11(c)(1)(i) (1987). The regulation further provides that the individual shall not be counted in determining the size of the household. 7 C.F.R. § 273.11(c)(1)(ii) (1987).[2] The Secretary of the South Dako-

1. Section 2020(e)(5) of Title 7 provides: "The State plan of operation required under subsection (d) of this section shall provide, among such other provisions as may be required by regulation—
(5) the specific standards to be used in determining the eligibility of applicant households which shall be in accordance with sections 5 and 6 of this Act [7 U.S.C. §§ 2014, 2015] and shall include no additional requirements imposed by the State agency;
7 U.S.C. § 2020(e)(5) (1982).

2. 7 C.F.R. § 273.11(c)(1) provides in full:

The eligibility and benefit level of any remaining household members of a household containing individuals determined ineligible because of disqualification for intentional Program violation or imposition of a sanction while they were participating in a household disqualified for failure to comply with workfare requirements shall be determined as follows:

(i) *Income, resources, and deductible expenses.* The income and resources of the ineligible household member(s) shall continue to count in their entirety, and the entire household's allowable earned income, standard, medical, depend-

ta Department of Social Services has promulgated rules governing sanctions for intentional violations of the Food Stamp Program that mirror the federal regulations.[3]

The plaintiffs bring this action for injunctive and declaratory relief under 42 U.S.C. § 1983 complaining that the defendants' policies on the imposition of sanctions for intentional violation of the Food Stamp Program violate the Food Stamp Act.[4] The plaintiffs charge that the rules promulgated by the state defendant violate 7 U.S.C. § 2020(e)(5) by imposing additional eligibility requirements. In addition, the plaintiffs allege that the regulations issued by the federal defendant violate 7 U.S.C. §§ 2013(c) and 2014(b) because they are neither "necessary or appropriate" for the administration of the Program nor promulgated "in accordance with the provisions of [7 U.S.C. § 2014(b) ]."[5] The plaintiffs also argue that the defendants' policies violate the fifth and fourteenth amendments.

The Court assumes jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). Summary judgment is appropriate in this action because there are no genuine issues of material fact and the defendants are entitled to a judgment as a matter of law. F.R.C.P. 56(c).

## II. FACTS

Trudie C. Johnston brings this action on behalf of her children, Rebecca, Isaac, Elizabeth, William, and Daniel Johnston.[6] On April 30, 1986, Johnston was arraigned on charges of obtaining money, property, or assistance by fraud from the South Dakota Department of Social Services and forgery. She pled guilty to these charges and, as a result, was declared ineligible for Food Stamp benefits for a period of six months. During the sanction period, Johnston's income was counted in determining her household's income, but she was not counted as a household member.

---

ent care, and excess shelter deductions shall continue to apply to the remaining household members.

(ii) *Eligibility and benefit level.* The ineligible member shall not be included when determining the household's size for the purposes of:

(A) Assigning a benefit level to the household;

(B) Comparing the household's monthly income with the income eligibility standards; or

(C) Comparing the household's resources with the resource eligibility limits. The State agency shall ensure that no household's coupon allotment is increased as a result of the exclusion of one or more household members.

3. Rules 5531 and 5510 of the South Dakota Food Stamp Certification Manual provide:

5531 *INDIVIDUAL DISQUALIFIED FOR INTENTIONAL PROGRAM VIOLATION*

The earned or unearned income of an individual disqualified from the household for intentional program violation shall continue to be attributed in their entirety to the remaining household members.

5510 *RULE*

A member or members of the household can be excluded while the remaining members continue to participate. Excluded persons are household members, although not allowed to participate and their circumstances including income and resources are subject to verification the same as any other member.

Exclusion may occur for the following reasons:
....

D) Intentional program violation (IPV) disqualified—Individuals disqualified for an inten-

tional program violation as described in Section 7300.

The excluded member is not included when assigning a benefit level to the household or when comparing the household's income with maximum gross or net income standards. However, the excluded member's resources are considered in total with the maximum resource standard.... The excluded member shall not be included in the household when comparing the household's resources with the resource eligibility limit.

4. The action was originally brought against only the state defendant. The federal defendant was joined as an indispensable party by order of the Court.

5. Section 2014(b) provides in relevant part:

"The Secretary shall establish uniform national standards of eligibility ... for participation by households in the food stamp program in accordance with the provisions of this section. No plan of operation submitted by a State agency shall be approved unless the standards of eligibility meet those established by the Secretary, and no State agency shall impose any other standards of eligibility as a condition for participation in the program." 7 U.S.C. § 2014(b) (1982).

6. This action was brought as a class action. However, as the plaintiffs are not entitled to summary judgment, the Court need not decide whether class certification is appropriate.

An administrative hearing was held by the South Dakota Department of Social Services on December 16, 1986. At that hearing, Johnston challenged the application of South Dakota's rules on sanctions for intentional program violators to the Johnston household. Relying on S.D.C.L. § 28–12–1, the hearing examiner held that the amount of the Johnston households benefits during the sanction period was correctly computed. Section 28–12–1 provides that the state agency may adopt rules in accordance with federal regulations implementing the Food Stamp Act. S.D.C.L. § 28–12–1 (1984). Because the agency's rules are in accordance with 7 C.F.R. § 273.11(c)(1), the Department upheld the application of Rules 5510 and 5531 to the Johnston household.

Johnston was ineligible for food stamps from July through December of 1986. As a result of the application of Rules 5510 and 5531, Johnston's household was reduced to five members while her income was counted as available to the household. The five-member household consisting of Johnston's five children received fewer Food Stamp benefits than they would have received were it not for the disqualification of their mother.[7]

## III. DISCUSSION

The plaintiffs assert that the state and federal regulations on sanctions for intentional violations of the Food Stamp Program are contrary to the purposes and goals of the Act because innocent household members suffer the loss of Food Stamp benefits. Johnston argues that the challenged regulations violate the Food Stamp Act because they are inconsistent with the Act's general aim of raising the level of nutrition among low-income households. More specifically, Johnston contends that 7 U.S.C. § 2015(b)(1) does not authorize the reduction or elimination of benefits of a household after a finding of an intentional program violation.

### The Federal Regulation

■ The plaintiffs' challenge to the federal regulation is that 7 C.F.R. § 273.11(c)(1) is inconsistent with the Food Stamp Act. Because the Court holds that the federal sanction regulation is consistent with the Act, the plaintiffs' motion for summary judgment against the Secretary of the United States Department of Agriculture (Secretary) on this ground must be denied.

In determining how Congress intended the Food Stamp Act to be implemented, the Court must first look to the language of the statute itself. *See Heckler v. Turner,* 470 U.S. 184, 193, 105 S.Ct. 1138, 1144, 84 L.Ed.2d 138 (1985). Section 2013(c) of Title 7 authorizes the Secretary to issue regulations "necessary or appropriate for the effective and efficient administration of the food stamp program." 7 U.S.C. § 2013(c) (1982). This language encompasses broad discretion to carry out the Secretary's interpretation of the Act. *See Knebel v. Hein,* 429 U.S. 288, 293–94, 97 S.Ct. 549, 552–53, 50 L.Ed.2d 485 (1977); *State of Missouri v. Block,* 690 F.2d 139, 142 (8th Cir.1982); *Jacquet v. Westerfield,* 569 F.2d 1339, 1344–45 (5th Cir.1978). This authority has been construed to include the authority "to protect the program from those who would abuse it." 569 F.2d at 1345. As stated by the United States Court of Appeals for the Eighth Circuit, "[u]nless Congress has specifically removed this administrative power from the Secretary, or unless the regulation is 'inconsistent with [the Act],' 7 U.S.C.A. § 2013(c), the regulation must be upheld." *Id.*

7. The following chart indicates the amount of food stamps the Johnston household received in each month of the sanction period and the amount the household would have received had Trudie Johnston not been disqualified:

| | Received | Without Disqualification |
|---|---|---|
| July | 212 | 276 |
| August | 236 | 300 |
| September | 225 | 289 |
| October | 0 | 0 |
| November | 36 | 101 |
| December | 43 | 108 |

Notably, the household would not have received any food stamps in October, 1986, even without the disqualification of Johnston because the household's net monthly income exceeded the maximum net monthly income figure for food stamp eligibility as set forth in the State's income eligibility guidelines.

The Act expressly provides for the disqualification of members of a food stamp household who engage in fraudulent conduct. *See* 7 U.S.C. § 2015(b)(1) (1982). Upon disqualification, a sanction of ineligibility for six months is imposed for a first offense of this nature. *Id.* When a member of a household is sanctioned, the household cannot receive increased benefits during the sanction period. *Id.* However, to say that household benefits may not be increased does not necessarily preclude a decrease in household benefits, as the plaintiffs contend.

The Secretary's interpretation of 7 U.S.C. § 2015(b)(1) does not give rise to an inconsistency between the Act and the regulation. The plain language of the Act states that the Secretary may not fashion a sanction that results in increased benefits to the household of an intentional program violator. Nothing in the language of the Act expressly removes the Secretary's discretionary authority under 7 U.S.C. § 2013(c) to promulgate sanctions for intentional program violations that may result in a decrease in benefits to remaining household members after one member is found ineligible. This authority allows the Secretary to regulate the Program efficiently. Imposing sanctions to protect the Program from intentional abuses is both necessary and appropriate in administering the Program efficiently and effectively.

The plaintiffs argue that the Agency's discretionary powers are inapplicable to impose sanctions that are not expressly authorized. Case law supports the plaintiffs' contention that eligibility for federal assistance programs may not be terminated as a sanction when an act is silent on the termination of benefits. *See, e.g. Tripp v. Coler,* 640 F.Supp. 848, 856 (N.D.Ill.1986) (holding Medicaid eligibility cards may not be withheld as a sanction for overuse); *see also Davis v. Reagen,* 630 F.2d 1299, 1307 (8th Cir.1980) (striking down WIN sanction of deregistration). Administratively imposed sanctions are suspect that have the effect of circumventing sanctions enacted by Congress. *Cf. Davis,* 630 F.2d at 1307. However, in this action, the Secretary's sanction regulation does not run counter to the Act's sanction provision. The federal regulation does not declare innocent household members ineligible for food stamps. Following the imposition of a sanction, remaining household members are eligible for benefits as before. Only the program violator is ineligible and therefore not counted as part of the household in determining the amount of benefits. Moreover, this Court must defer to permissible constructions of statutes by agencies authorized to implement them when Congress has not addressed a question at issue. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *see also Biggs v. Lyng,* 823 F.2d 15, 18–19 (2nd Cir.1987).

The Court's holding that the federal regulation is consistent with the Act is also supported by the language of the Act which speaks in terms of aiding low-income *households.* The Supreme Court has recognized that the household unit is central to the Food Stamp Program. *See generally Lyng v. International Union, United Auto., Aerospace and Agricultural Implement Workers of America, UAW,* —— U.S. ——, 108 S.Ct. 1184, 1193–94, 99 L.Ed.2d 380 (1988); *Lyng v. Castillo,* 477 U.S. 635, 636, 106 S.Ct. 2727, 2728, 91 L.Ed.2d 527 (1986). For example, in *Lyng v. International Union, United Auto., Aerospace and Agricultural Implement Workers of America, UAW,* the Court upheld a 1981 amendment to the Food Stamp Act precluding households from gaining an increase in benefits when income of a striking household member decreased. 108 S.Ct. at 1192. In reaching this result, the Court stated:

> Whenever an individual takes any action that hampers his or her ability to meet the program's eligibility requirements, such as quitting a job or failing to comply with the work-registration requirements, the entire household suffers accordingly. We have never questioned the constitutionality of the entire Act on this basis, and we just recently upheld the validity of the Act's definition of "household" even though that definition embodies the basic fact that the Act de-

termines benefits "on a 'household' rather than an individual basis."

108 S.Ct. at 1194 (quoting *Lyng v. Castillo*, 477 U.S. at 636, 106 S.Ct. at 2728). At least one federal district court has also recognized the responsibility household members have to each other. *See Wilson v. Lyng*, 662 F.Supp. 1391, 1394 (E.D.N.Y. 1987) (stating that "the entire household suffers" when the head of the household "does not meet his or her responsibilities"). The Secretary's sanction regulation is consistent with the Act's emphasis on the household unit because it impacts on each member of an affected household.

### Equal Protection Claim

■ The plaintiffs contend that the defendants' sanction policies violate their equal protection rights under the fifth and the fourteenth amendments.[8] Specifically, the Johnstons argue that the Secretary's sanction regulation creates two classes of "children and other household members." The plaintiffs state the two classifications as those children and other household members "not related by blood to" a program violator and those children and other household members "related to" a program violator. The Act's definition of a "household," however, undermines the plaintiffs' attempt to create a suspect classification based on family relations.

Following the decision of the Supreme Court in *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), the Food Stamp Act was amended to redefine households under the Act. The Court held in *Moreno* that the Act's classifications based on the relations of household members to each other was unconstitutional. 413 U.S. at 534–36, 93 S.Ct. at 2825–26. Accordingly, the current Act's three classes of households are drawn based on the concept of groups of people who "customarily purchase food and prepare meals together for home consump-

tion." 7 U.S.C.S. § 2012(i) (1985 & Supp. 1988). In the case of a parent living with minor children of that parent, the custom of common food purchasing and preparation is presumed. *See* 7 U.S.C.S. § 2012(i)(3) (1985 & Supp.1988). The Johnston household falls into this category. The Secretary's sanction regulation applies equally to each of the Act's enumerated types of household arrangements. The plaintiffs are incorrect in arguing that the Act or the Secretary's regulations draw unconstitutional classifications based on blood relation.

The Act's provision on sanctions for fraudulent conduct creates only one classification. Individuals in a household with a member who commits fraud or an intentional program violation are treated differently from individuals in households without a program violator. Legislative classifications must be upheld if they are "rationally related to a legitimate governmental interest." *Moreno*, 413 U.S. at 533, 93 S.Ct. at 2825. The equal protection clause does not require legislators to draw such classifications with " 'mathematical nicety.' " *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). Courts need only find "plausible reasons" for legislative classifications. *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

The legislative history of 7 U.S.C. § 2015(b)(i) does not directly address the counting of income of an intentional program violator. A Senate report, however, suggests that the sanction regulation promulgated by the Secretary was considered by the Senate Agriculture, Nutrition and Forestry Committee. That Committee reported that: "the Secretary should seriously consider attributing all of the income of the disqualified member to the household (with no pro rata share re-

---

**8.** The plaintiffs' amended complaint includes the claim that the defendants' policies violate the due process clause of the fourteenth amendment because they infringe upon the plaintiffs' fundamental rights of family integrity. The Supreme Court has decided that the classification of a "household" under the Food Stamp Act

does not infringe upon any fundamental interests of household members, such as the interest in family integrity. *See Lyng v. Castillo*, 477 U.S. 635, 638, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986); *see also Lyng*, 108 S.Ct. at 1191–92. Thus, the Court holds that the plaintiffs' due process claim is without merit.

duction), during the disqualification period." S.REP. NO. 97–139, 97th Cong., 1st Sess., at 67, *reprinted* in 1981 U.S.CODE CONG. & ADMIN.NEWS 396, 457. This suggestion was considered as a way of combatting the possibility of a household receiving increased benefits following a finding of fraud under the sanction regulation in effect when 7 U.S.C. § 2015(b)(1) was enacted. Under the previous regulation, the intentional program violator was not counted as a member of the household during the sanction period while their income was counted on a pro rata basis. 7 C.F.R. § 273.11(c)(2) (1981). Thus, in a household of two, one-half of the disqualified member's income would be considered in determining the benefit level of the remaining household member. In cases in which the disqualified member had substantial income, this approach might result in a substantial increase or even doubling of benefits to the remaining household member.

The federal sanction regulation is a rational response to the perceived problem of fraudulent conduct resulting in increased Food Stamp benefits. The United States Court of Appeals for the Fifth Circuit has recognized that the Food Stamp Program was intended to be "free from fraud." *Jacquet*, 569 F.2d at 1346. The Secretary's regulation is directly related to this intent. The federal regulation serves a legitimate governmental interest in protecting the Program from fraud. The state defendant similarly argues that the need to deter fraud against the Food Stamp Program is a legitimate governmental interest. While a statute specifically aimed at penalizing children for their parents unlawful status has been struck down as a violation of equal protection, *see Plyler v. Doe*, 457 U.S. 202, 220–21, 102 S.Ct. 2382, 2396–97, 72 L.Ed.2d 786 (1982) (invalidating state statute denying funds to educate illegal alien children), the Secretary's sanction policy is not directed at children.[9] The regulations declare that program violators are ineligible for benefits for a period of time and that the benefit level of remaining household members of all ages is determined by counting all income and resources of the ineligible member. The possible cost to innocent children is a countervailing cost of the policy which courts should consider.[10] *See Plyler*, 457 U.S. at 224, 102 S.Ct. at 2398. However, in light of the government's interest in the integrity of the Food Stamp Program, the federal regulation must be upheld as rationally related to a legitimate governmental interest.

*State Rules*

As the state defendant's Rules 5510 and 5531 adopt the same sanction policy as the federal agency, the Court's holding that the federal regulation is consistent with the Food Stamp Act is also a holding that the South Dakota rules are consistent with the Act. As previously discussed, the federal sanction policy does not impose additional eligibility requirements. Thus, the state rules do not violate 7 U.S.C. § 2020(e)(5).

## CONCLUSION

As the Court holds that the state and federal rules and regulations on sanctions for intentional violations of the Food Stamp Program do not violate any provisions of the Food Stamp Act or the Constitution, summary judgment is granted in favor of the defendants.

---

**9.** The plaintiffs also assert that the sanction provisions "appear" to have a disparate impact on American Indians. The Court holds that this assertion fails to state a cause of action under the equal protection clause because the plaintiffs have not alleged intentional discrimination based on race. *See Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir.1987).

**10.** The plaintiffs rely on cases decided under the Aid to Families with Dependent Children Program (AFDC) for the general proposition that the sins of the mother shall not be visited upon the children. *See, e.g., Simpson v. Miller*, 535 F.Supp. 1041, 1050–51, 1051 n. 12 (N.D.Ill.1982). However, because the AFDC program is designed to benefit the "dependent child" rather than households, these cases are not dispositive in this action.